**VALENTI LAW APC**
Matthew D. Valenti (SBN 253978)
E-mail: mattvalenti@valentilawapc.com
5252 Balboa Avenue, Suite 700
San Diego, California 92117
Phone: (619) 540-2189

Attorney for David Radcliff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID RADCLIFF,<br><br>          Plaintiff,<br><br>   vs.<br><br>BACARI OPERATIONS, LLC; VENTURA 14106 LLC; and DOES 1-10,<br><br>          Defendants. | Case No.:<br><br>COMPLAINT FOR:<br><br>DENIAL OF CIVIL RIGHTS AND ACCESS TO PUBLIC FACILITIES TO PHYSICALLY DISABLED PERSONS IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990, (42 U.S.C. §12101, *et seq*.) AND THE UNRUH CIVIL RIGHTS ACT, (CALIFORNIA CIVIL CODE §51, *et seq*.)<br><br><u>DEMAND FOR JURY TRIAL</u> |

*"[T]he continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous."* 42 U.S.C. §12101(a)(8).

*"It is the policy of this state to encourage and enable individuals with a disability to participate fully in the social and economic life of the state ..."* California Government Code §19230(a).

Plaintiff DAVID RADCLIFF (hereinafter referred to as "Plaintiff") complains of BACARI OPERATIONS, LLC a Delaware limited liability company dba BACARI SHERMAN OAKS; VENTURA 14106 LLC a California limited liability company; and DOES 1-10, (each, individually a "Defendant" and collectively "Defendants") and alleges as follows:

## I.    PARTIES

1.    Plaintiff DAVID RADCLIFF is a California resident and a qualified physically disabled person. He has cerebral palsy and uses a wheelchair for mobility. Plaintiff prides himself on his independence and on empowering other disabled persons to be independent.

2.    Defendants BACARI OPERATIONS, LLC, VENTURA 14106 LLC, and DOES 1-10 are and were the owners, operators, lessors and/or lessees of the subject business, property, and facility at all times relevant in this Complaint.

3.    Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including DOES 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to

amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

4. Defendants own and owned the property located at 14106 Ventura Blvd., Sherman Oaks, CA 91423 ("Subject Property") at all relevant times.

5. Defendants operate and operated a restaurant doing business as BACARI SHERMAN OAKS ("restaurant"), located at the Subject Property, at all relevant times.

6. Plaintiff alleges that the Defendants have been and are the owners, franchisees, lessees, general partners, limited partners, agents, trustees, employees, subsidiaries, partner companies and/or joint ventures of each of the other Defendants, and performed all acts and omissions stated herein within the course and scope of such relationships causing the damages complained of herein.

## II.    JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and §1343(a)(3) and (a)(4) for violations of the Americans with Disabilities Act of 1990, U.S.C. §12101, *et seq*.

8. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising out of the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which expressly incorporates the Americans with Disabilities Act.

9. Venue is proper in this court pursuant to 28 U.S.C. U.S.C. §1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's causes of action arose in this district.

## III.    INTRODUCTION

10. Plaintiff went to the restaurant twice. Once in approximately March 2024, and then again on March 2, 2025. Both times were to join his friends who had reserved a table at the restaurant for a party.

11.     Although he faced numerous accessibility barriers during his first visit, it was during his most recent visit in which the barriers he faced caused major anxiety and embarrassment.

12.     At that March 2, 2025 visit, Plaintiff was led by a hostess to the side door of the restaurant to meet his party. There were many outdoor heaters, chairs and tables blocking the route which the hostess had to move out of the way as he wheeled through. When he arrived at the side entrance, Plaintiff encountered two stairs leading up to the door where his friends were seated at the table. This door was raised nine inches off the ground. Plaintiff was unable to navigate these large changes in elevation.

13.     The hostess asked him what he would like to do but did not offer him any options. Defendants do not have a portable ramp or alternate route leading to that space, or none was offered to him. Plaintiff was left to decide if he should turn around and go home, or risk personal injury while attempting to somehow navigate the stairs. Plaintiff could see his friends through the open doorway and the glass, and they could see him. He was extremely frustrated and embarrassed to have so much attention focused on him and his situation, and afraid that he might get hurt trying to join his friends at the party.

14.     Plaintiff decided to have two of his friends and the hostess pick him up while he was in his chair and carry him up over the steps and threshold to the seating area. It was unnerving and dangerous, as one person holding the wheelchair was on the upper level and two people were on the lower level so that he was raised over the steps at a dangerous angle. This was very embarrassing since all his friends were seated within viewing distance.

15.     Plaintiff spent the remainder of the party anxious and embarrassed, constantly worrying about how he would be forced to return by the same dangerous route. At the end of the party he again had to be carried back down the uneven threshold in the same manner.

## IV. FACTS

16. Unfortunately, during Plaintiff's visits, Defendants did not offer persons with disabilities equivalent facilities, privileges, advantages, and accommodations offered to other persons.

17. Plaintiff encountered barriers that interfered with and denied Plaintiff the ability to use and enjoy the goods, services, privileges, advantages, and accommodations offered by Defendants at the Subject Property.

18. These barriers violate one or more standards of the Americans with Disabilities Act ("2010 ADA") and/or the California Building Codes ("2022 CBC").

19. Parking for patrons visiting the Subject Property is among the facilities, privileges, advantages, and accommodations offered by Defendants.

20. According to the U.S. Department of Justice, "a public accommodation's first priority should be to enable individuals with disabilities to physically enter its facility. This priority on 'getting through the door' recognizes that providing physical access to a facility from public sidewalks, public transportation, or parking is generally preferable to any alternative arrangements in terms of both business efficiency and the dignity of individuals with disabilities." ADA Title III Technical Assistance Manual §III-4.4500.

21. When valet parking is provided, there must be at least one accessible parking space designated and marked for disabled persons. 2010 ADA §502 et seq.; 2010 ADA §208.2; 2022 CBC 11B-502 et seq; 2022 CBC 11B-208.2.

22. When valet parking is provided, there must be at least one passenger loading zone designated and marked for disabled persons in compliance with ADA 2010 §209.2; ADA 2010 §503; 2022 CBC 11B-208.1; 2022 CBC 11B-209.4.

23. However, there is no accessible parking for disabled persons at the Subject Property because there are insufficient accessible parking spaces designated for disabled persons and/or the existing ostensibly designated space or

spaces are significantly noncompliant with the applicable ADA and CBC standards.

24. The parking space and adjacent access aisle must be clear of obstructions. However, the adjacent access aisle had and has a valet stand located within it, rendering it useless as an accessible space. ADA 2010 §502.3; 2022 CBC 11B-502.3; 2022 CBC 11B-108.

25. There is no accessible route from the parking area to the entrance of the restaurant. 2010 ADA §206.21; 2022 CBC 11B-206.21.

26. There is no accessible route from the public right of way to the entrance of the restaurant. The current route contains several stairs to enter the restaurant from the sidewalk with no ramp or wheelchair lift provided. 2010 ADA §206; 2010 ADA §206.2.1; 2010 ADA §303.4; 2010 ADA §403.4; 2022 CBC 206.2; 2022 CBC 11B-206.2.1; 2022 CBC 11B-303.4; 2022 CBC 11B-403.4.

27. None of the entrances of the restaurant are accessible. When two or more entrances are provided at least sixty percent must be accessible. 2010 ADA §206.4.1; 2022 CBC 11B-206.4.1.

28. There is no directional signage to enter an accessible entrance. If there is more than one entrance, directional signage to an accessible entrance is required. 2010 ADA §216.6; 2022 CBC 11B-216.6.

29. The service counter where the hostess greets customers outside measures 45 inches. Service counters are required to be no more than 36 inches maximum above the finish floor or ground. 2010 ADA §904.4; 2010 ADA §904.4.1; 2022 CBC 11B-904.4; 2022 CBC 11B-904.4.1.

30. Plaintiff was escorted by the hostess to a side door to meet his party. There was no accessible route to the side door. There were multiple outdoor heaters, chairs, and tables blocking the route which the hostess had to move out of the way as he wheeled through. 2010 ADA §206.2.1; ADA 2010 §402.2; ADA

2010 §403.5.1; ADA 2010 §403.5.2; 2022 CBC 11B-206.1; 2022 CBC 11B-402.2; 2022 CBC 11B-403.5.1; 2022 CBC 11B-403.5.2.

31.    Upon reaching the side door Plaintiff encountered the most frustrating and dangerous barrier of his visit. The threshold of the entrance to the room where his party was dining contains two steps measuring a total of nine inches in height. 2010 ADA §404.2.5; 2022 CBC 11B-404.2.5.

32.    There is also a step to the outdoor side seating area resulting in a change in height of more than ½ inch. 2010 ADA §404.2.5; 2022 CBC 11B-404.2.5.

33.    None of the tables in any of the dining areas are accessible to a person in a wheelchair. Where dining surfaces are provided for the consumption of food and drink, at least 5% of those must be accessible. There must be minimum dimensions for the clearance under an accessible dining table so that the legs and toes of a person in a wheelchair can fit under the table. In particular, the required depth for toe clearance under an accessible table is a minimum of 17 inches. The clear width under an accessible table is 30 inches minimum. The measured base depth of the tables is only 2 inches, while the clear toe width is only 13 inches. 2010 ADA §226.1; 2010 ADA §306.2.3; 2010 ADA §306.2.5; 2010 ADA §902; 2022 CBC 11B-226.1; 2022 CBC 11B-306.2.3; 2022 CBC 11B-306.2.5; 2022 CBC 11B-902.

34.    Swinging door and gate surfaces within 10 inches of the finish floor or ground shall have a smooth surface on the push side extending the full width of the door or gate. Doorstops must not be placed within 10 inches of the finish floor. 2010 ADA §404.2.10; 2022 CBC 11B-404.2.10.

35.    There is a gap in the brick walkway where the brick meets the concrete floor resulting in a 3-inch-wide opening.  Openings in the floor or ground surfaces must not allow passage of a sphere more than ½ inch diameter. 2010 ADA § 302.3; 2022 CBC 11B- 302.3.

36. Currently there are routes throughout the restaurant measuring 21 inches, 24 inches, 32 inches, and 33 inches wide. Accessible routes must have a minimum width of 36 inches. 2010 ADA §403.5.1; 2022 CBC 11-B 403.5.1.

37. Ramps that have a rise of 6 inches must have handrails on both sides. 2010 ADA §405.8; 2010 ADA §505.2; 2022 CBC 11B- 405.8; 2022 CBC 11B-505.2.

38. The handrails currently provided at the ramps at the restaurant do not have any open extensions. Ramp handrails shall extend horizontally above the landing for 12 inches minimum beyond the top and bottom of ramp runs. Extensions shall return to a wall, guard, or the landing surface, or shall be continuous to the handrail of an adjacent ramp run. 2010 ADA §505.10.1; 2022 CBC 11B-505.10.1.

39. Where restrooms are provided, each restroom must be accessible. 2010 ADA §213.2; 2022 CBC 11B-213.2. Among other requirements, a restroom with toilet compartments must include at least one such compartment with sufficient width and maneuvering space for a wheelchair user to transfer to and from the toilet. 2010 ADA §604.3.1, §604.8; 2022 CBC 11B-604.3.1, 11B-604.8.

40. The men's restroom's door only provides 29 inches of clear space. Door openings are required to provide a minimum of 32 inches of clear space. 2010 ADA 404.2.7; 2022 CBC 11B-404.2.7

41. Restroom stall doors are required to have a sliding latch and must contain no round knobs. The men's restroom has a round knob, a lock which requires pinching, and is 65.5 inches above the finish floor. Locks and latches are required to be installed at a maximum height of 48 inches above the finish floor. ADA §309.4; 2010 ADA § 404.2.7; ADA §604.8.1.2; 2022 CBC 11B-309.4; 2022 CBC 11B- 404.2.7; 2022 CBC 11B- 604.8.1.2

42. The men's restroom's stall door clear space is 29 inches. The stall door is required to have a clear space of 32 inches. 2010 ADA §404.2.3; 2022 CBC 11B-404.2.3.

43. The men's restroom's stall door is not self-closing. Restroom stall doors are required to be self-closing. 2010 ADA §604.8.1.2; 2022 CBC 11B-604.8.1.2.

44. The men's restroom's stall dimensions are 36 inches by 80 inches. The stall's required dimensions are 60 inches by 56 inches. 2010 ADA § 604.3.1; 20101 ADA 604.8.1.1; 2022 CBC 11B-604.3.1; 2022 CBC 11B- 604.8.1.1.

45. The men's restroom's stall clear space is 16 inches from the toilet to the door. The stall's required clear space is 30 inches by 48 inches with the door open. 2010 ADA §404.2.3; 2022 CBC 11B- 404.2.3.

46. The men's restroom contains one grab bar located 30 inches above the finish floor. Accessible restrooms are required to have two grab bars located 33 to 36 inches above the finish floor. 2010 ADA §609.4; 2022 CBC 11B- 609.4.

47. The men's restroom's seat covers are located 52 inches above the finish floor. Accessible restrooms have a required height of 15 to 48 inches for seat covers above the finish floor. ADA 2010 §308.2.1; 2022 CBC 11B- 308.2.1.

48. The men's restroom's tissue height is 27 inches above the finish floor. The required height is 15 to 48 inches above the finish floor. 2010 ADA §604.7; 2022 CBC 11B- 604.7.

49. The men's restroom's sink pipes are not wrapped. Restroom sink pipes must be completely wrapped to avoid burning contact. 2010 ADA §606.5; 2022 CBC 11B-606.5.

50. The men's restroom's mirror height is 45 inches above the finish floor. The required height is 40 inches above the finish floor maximum, and only 35 inches if the mirror is not located above the sink. 2010 ADA §603.3; 2022 CBC 11B- 603.3.

51.     The men's restroom's soap dispenser height is 51 inches above the finish floor. The maximum height allowed is 48 inches above the finish floor, and only 44 inches if the sink depth is 20 to 25 inches deep. 2010 ADA §308.2.1; 2010 ADA §308.2.2; 2022 CBC 11B- 308.2.1; 2022 CBC 11B- 308.2.2.

52.     The men's restroom's paper towel /air dryer activation is 51 inches above the finish floor. The maximum height allowed is 48 inches above the finish floor, and only 44 inches if the sink depth is 20 to 25 inches deep. 2010 ADA §308.2.1; 2010 ADA §308.2.2; 2022 CBC 11B- 308.2.1; 2022 CBC 11B- 308.2.2.

53.     The men's restroom's turning space is 29 inches from the sink to the wall. The required turning space is 60 inches by 60 inches. 2010 ADA §603.2.1; 2022 CBC 11B- 603.2.1.

54.     The men's restroom's clearance beside the inside door is 7 inches. The required clearance is 18 inches from the pull side with a front approach. 2010 ADA §604.8.1.2; 2022 CBC 11B- 604.8.1.2.

55.     The unisex restroom at Bacari's is also not accessible for persons using a wheelchair.

56.     The unisex restroom's door has a lock with a twist knob. 2010 ADA §404.2.7; 2022 CBC 11B-404.2.7.

57.     The unisex restroom's coat hook height is 61 inches above the finish floor. The required height 15 to 48 inches high. 2010 ADA §603.4; 2022 CBC 11B- 603.4.

58.     The unisex restroom has two mirrors. Both mirrors measured 55 inches above the finish floor. The required height is 40 inches above the finish floor maximum, and only 35 inches if the mirror is not located above the sink. 2010 ADA §603.3; 2022 CBC 11B- 603.3.

59.     The unisex restroom's turning space is 38.5 inches from the sink to the wall. The required turning space is 60 inches by 60 inches. 2010 ADA §603.2.1; 2022 CBC 11B- 603.2.1.

60.    The photos below show one or more of these violations.










































61. The barriers existed during Plaintiff's visit to the Subject Property. Plaintiff personally encountered these barriers.

62. These inaccessible conditions and barriers denied Plaintiff full and equal access during his visit to Bacari Sherman Oaks restaurant. Plaintiff was demoralized, put in jeopardy, and publicly humiliated in front of his friends and strangers. Defendants failed to provide accessible seating, a portable ramp, or any other accommodations to treat Plaintiff with equity, respect, or dignity.

63. These barriers denied Plaintiff full and equal access due to his disability because, *inter alia*, they caused Plaintiff anxiety, difficulty, discomfort, and embarrassment which patrons who do not use a wheelchair for mobility do not suffer when they access the Subject Property.

64. Plaintiff has Article III standing because he visited the subject property to enjoy a meal with friends. The Subject Property is conveniently located and in the general area where he lives, shops, goes to medical appointments, visits family and friends, recreates, and does other normal activities in his daily life. Therefore, in addition to his concrete plan to return to the Subject Property to test for ADA and CBC compliance, Plaintiff also intends to return to the Subject Property in the near future to enjoy another meal after the accessibility barriers alleged herein have been removed.

65. Plaintiff alleges that Defendants knew that the barriers prevented equal access. Plaintiff further alleges that Defendants had actual or constructive knowledge that the architectural barriers prevented equal access, and that the noncompliance with the Americans with Disabilities Act and Title 24 of the California Building Code regarding accessible features was intentional.

66. Defendants have obstructed or failed to maintain, in working and useable conditions, those features necessary to provide ready access to persons with disabilities. "A public accommodation shall maintain in operable working condition those features of facilities and equipment that are required to be readily

accessible to and usable by persons with disabilities." 28 C.F.R. §36.211(a); 2022 CBC 11B-108.

67. The State of California Department of General Servicers, Division of the State Architect (DSA) provides commentary to 2022 CBC 11B-108 as follows:

> Features for accessibility must be permanently functional, unobstructed and may not be removed.  It is not sufficient to provide features such as accessible routes, parking, elevators, ramps or signage if those features are not maintained in a manner that enables individuals with disabilities to use them.

DSA, 2019 California Access Compliance Advisory Reference Manual, p.84.

68. Defendants have the financial resources to remove these barriers without much expense or difficulty in order to make their property more accessible to their mobility impaired customers. The United States Department of Justice has identified that these types of barriers are readily achievable to remove.

69. To date, Defendants refuse to remove these barriers, in violation of the law, willfully depriving disabled persons including Plaintiff of important civil rights.

70. On information and belief, Plaintiff alleges that the Defendants' failure to remove these barriers was intentional because the barriers are logical and obvious. During all relevant times Defendants had authority, control, and dominion over these conditions and therefore the absence of accessible facilities was not a mishap, but rather an intentional act.

71. The barriers to access are listed above without prejudice to Plaintiff citing additional barriers to equal access by an amended complaint after inspection by Plaintiff's Certified Access Specialist (CASp). *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903 (9th Cir. 2011); *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034 (9th Cir. 2008); *Chapman v. Pier One Imports (USA), Inc.*, 631 F.3d 939 (9th Cir. 2011). All of these barriers to access render the premises inaccessible to physically disabled persons who are mobility impaired, such as Plaintiff, are barriers Plaintiff

may encounter when he returns to the premises. All public accommodations must be brought into compliance with all applicable federal and state accessibility requirements.

<strong>FIRST CAUSE OF ACTION</strong>

Violation of the Americans With Disabilities Act of 1990

(42 U.S.C. §12101, <em>et seq</em>.)

(Against All Defendants)

72.    Plaintiff alleges and incorporates by reference, as if fully set forth again herein, each and every allegation contained in all prior paragraphs of this complaint.

73.    More than thirty years ago, the 101st United States Congress found that although "physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination…in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services." 42 U.S.C. §12101(a).

74.    In 1990 Congress also found that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals," but that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous." 42 U.S.C. §12101(a).

75.    In passing the Americans with Disabilities Act of 1990, which was signed into law by President George H. W. Bush on July 26, 1990 (hereinafter the "ADA"), Congress stated as its purpose:

"It is the purpose of this Act

(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

(3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and

(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day to-day by people with disabilities."

42 USC §12101(b).

76.     As part of the ADA, Congress passed "Title III – Public Accommodations and Services Operated by Private Entities" (42 U.S.C. §12181 *et seq*.). Title III of the ADA prohibits discrimination against any person "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. §12182(a).

77.     The specific prohibitions against discrimination include, *inter alia*, the following:

- 42 U.S.C. §12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

- 42 U.S.C. §12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...;"

- 42 U.S.C. §12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services...;"

- 42 U.S.C. §12182(b)(2)(A)(iv): "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities... where such removal is readily achievable;"

- 42 U.S.C. §12182(b)(2)(A)(v): "where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable."

78. Plaintiff is a qualified individual with a disability as defined in the Rehabilitation Act and in the Americans with Disabilities Act of 1990.

79. The acts and omissions of Defendants set forth herein were in violation of Plaintiff's rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq*.

80. The removal of each of the physical and policy barriers complained of by Plaintiff as hereinabove alleged, were at all times herein mentioned "readily achievable" under the standards of §12181 and §12182 of the ADA. Removal of each and every one of the architectural and/or policy barriers complained of herein was already required under California law. Further, on information and belief, alterations, structural repairs or additions since January 26, 1993, have also independently triggered requirements for removal of barriers to access for disabled persons per §12183 of the ADA. In the event that removal of any barrier is found

to be "not readily achievable," Defendants still violated the ADA, per §12182(b)(2)(A)(v) by failing to provide all goods, services, privileges, advantages and accommodations through alternative methods that were "readily achievable."

81.    On information and belief, as of the date of Plaintiff's encounter at the premises and as of the filing of this Complaint, Defendants' actions, policies, and physical premises have denied and continue to deny full and equal access to Plaintiff and to other mobility disabled persons in other respects, which violate Plaintiff's right to full and equal access and which discriminate against Plaintiff on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation of 42 U.S.C. §12182 and §12183 of the ADA.

82.    Defendants' actions continue to deny Plaintiff's rights to full and equal access and discriminated and continue to discriminate against him on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of Defendants' goods, services, facilities, privileges, advantages and accommodations, in violation of the ADA, 42 U.S.C. §12182.

83.    Further, each and every violation of the Americans With Disabilities Act of 1990 also constitutes a separate and distinct violation of California Civil Code §51(f), §52, §54(c) and §54.1(d), thus independently justifying an award of damages and injunctive relief pursuant to California law, including but not limited to Civil Code §54.3 and §55.

**SECOND CAUSE OF ACTION**

Violation of the Unruh Civil Rights Act

(California Civil Code §51, *et seq*.)

(Against All Defendants)

84.    Plaintiff alleges and incorporates by reference, as if fully set forth again herein, each and every allegation contained in all prior paragraphs of this complaint.

85.     California Civil Code §51 provides that physically disabled persons are free and equal citizens of the state, regardless of their medical condition or disability:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, **disability, or medical condition** are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

California Civil Code §51(b) (emphasis added).

86.     California Civil Code §51.5 also states, in part: "No business, establishment of any kind whatsoever shall discriminate against…any person in this state on account" of their disability.

87.     California Civil Code §51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

88.     California Civil Code §52 provides that the discrimination by Defendants against Plaintiff on the basis of his disability constitutes a violation of the general antidiscrimination provisions of §51 and §52.

89.     Each of Defendants' discriminatory acts or omissions constitutes a separate and distinct violation of California Civil Code §52, which provides that:

> Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

90.     Any violation of the Americans with Disabilities Act of 1990 constitutes a violation of California Civil Code §51(f), thus independently justifying an award of damages and injunctive relief pursuant to California law, including Civil Code §52.  Per Civil Code §51(f), "A violation of the right of any

individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

91.     The actions and omissions of Defendants as herein alleged constitute a denial of access to and use of the described public facilities by physically disabled persons within the meaning of California Civil Code §51 and §52.

92.     The discriminatory denial of equal access to and use of the described public facilities caused Plaintiff difficulty, discomfort, and embarrassment.

93.     As a proximate result of Defendants' action and omissions, Defendants have discriminated against Plaintiff in violation of Civil Code §51 and §52, and are responsible for statutory, compensatory and actual damages to Plaintiff, according to proof.

**PRAYER FOR RELIEF**

Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint. Plaintiff has suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the Defendants as alleged herein, unless Plaintiff is granted the relief he requests. Plaintiff and Defendants have an actual controversy and opposing legal positions as to Defendants' violations of the laws of the United States and the State of California.

The need for relief is critical because the civil rights at issue are paramount under the laws of the United States of America and the State of California.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as follows:

1.     Issue a preliminary and permanent injunction directing Defendants as current owners, operators, lessors, and/or lessees of the Subject Property and premises to modify the above described property, premises, policies and related facilities to provide full and equal access to all persons, including persons with physical disabilities; and issue a

COMPLAINT - 24

preliminary and permanent injunction pursuant to ADA §12188(a) and state law directing Defendants to provide facilities and services usable by Plaintiff and similarly situated persons with disabilities, and which provide full and equal access, as required by law, and to maintain such accessible facilities once they are provided; to cease any discriminatory policies; and to train Defendants' employees and agents how to recognize disabled persons and accommodate their rights and needs;

2.     Retain jurisdiction over the Defendants until such time as the Court is satisfied that Defendants' unlawful policies, practices, acts and omissions, and maintenance of physically inaccessible public facilities and policies as complained of herein no longer occur, and cannot recur;

3.     Award to Plaintiff all appropriate damages, including but not limited to actual and statutory damages according to proof;

4.     Award to Plaintiff all reasonable attorney fees, litigation expenses, and costs of this proceeding pursuant to 42 U.S.C §12205 and California Civil Code §52; and

5.     Grant such other and further relief as this Court may deem just and proper.

DATED: May 31, 2025                          **VALENTI LAW APC**

By:   */s/ Matthew D. Valenti*
       Matthew D. Valenti
       Attorney for Plaintiff
       David Radcliff

## JURY DEMAND

Plaintiff hereby demands a trial by jury for all claims and issues for which a jury is permitted.

DATED: May 31, 2025                          **VALENTI LAW APC**

                                        By:   */s/ Matthew D. Valenti*
                                              Matthew D. Valenti
                                              Attorney for Plaintiff
                                              David Radcliff